**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| **THE LANGUAGE DOCTORS, INC.,** | * |
| **Plaintiff,** | * |
| v. | * |
| | *   Case No.: PWG 20-cv-1755 |
| **MCM 8201 CORPORATE, LLC,** *et al.*, | * |
| **Defendants.** | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM AND ORDER**

The Language Doctors, Inc. ("TLD") filed suit in June 2020 against MCM 8201 Corporate, LLC ("MCM") and Morning Calm Management, LLC ("Morning Calm") seeking a Declaratory Judgment, pursuant to 28 U.S.C. § 2201, with respect to the termination date of an office lease agreement. Compl., ECF No. 1.[1] TLD contends that the termination date of the agreement is December 31, 2020, and Defendants contend that the termination date is October 31, 2021. Am. Compl. ¶ 27, ECF No. 17. Pending before me is Defendant MCM's Motion for Judgment on the Pleadings, ECF No. 10. It has been fully briefed,[2] and a hearing is not necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, MCM's motion is DENIED.

**BACKGROUND**

On July 30, 2018, TLD entered into a lease agreement with MCM after negotiating for the office space with MCM's representative and agent, Morning Calm. Am. Compl. ¶¶ 7-9; Lease

---

[1] In their Amended Complaint, The Language Doctors also allege negligent misrepresentation and detrimental reliance/promissory estoppel against Defendant Morning Calm. Am. Compl. ¶¶ 30-41, ECF No. 17.
[2] *See* Response in Opposition, ECF No. 18; Reply, ECF No. 21.

Agmt., Ex. A, ECF No. 17-2.  TLD's requirement for the office space was part of its ramping-up of operations in preparation to perform a substantial new contract it had been awarded by the Department of Justice ("DOJ") in August 2017.  Am. Compl. ¶¶ 6-7.  Because its need for office space was tied specifically to its contract with DOJ, TLD negotiated an option for early termination of the office lease agreement in the event that the DOJ contract was terminated.  *Id.* at ¶¶ 9-11, Lease Agmt. § 1.25.  As events developed, this turned out to be an important lease provision.

On February 20, 2020, TLD received notice that the DOJ contract was being terminated.  Am. Compl. ¶ 13.  The next day, TLD's real estate broker, Josh Cramer, informed Morning Calm about the cancellation of the contract and asked Jose Flefil, Morning Calm's associate director, to calculate the termination fee.  *Id.* at ¶ 14.  Mr. Flefil confirmed that TLD had until February 25, 2020 to provide the necessary termination notice that would trigger early termination under the Lease Agreement.  *Id.*  Through the exchange of a series of emails, Mr. Flefil communicated to Mr. Cramer that the termination fee was $240,653.09.  *Id.* at ¶ 15; Feb. 24 Emails, Ex. B, ECF No. 17-3.  In performing the calculations, Mr. Flefil used Morning Calm's Termination Fee Calculator that had been specifically created for TLD.  Am. Compl. ¶ 15; Term. Fee Calc., Ex. C, ECF No. 17-4.  The calculation was based on a termination date of December 31, 2020.[3]  *See* Term. Fee Calc.

On February 25, 2020, TLD sent written notice with documentation to Mr. Flefil, stating its intent to terminate the lease pursuant to the Lease Agreement § 1.25.  Am. Compl. ¶ 16; Term. Not., Ex. D, ECF No. 17-5.  The notice included the planned payment arrangements for the

---

[3]   In the Amended Complaint, TLD alleges that the termination fee was based on the lease terminating in November 2020, referencing the Termination Fee Calculator. *Id.* at ¶ 15.  The exhibit reveals that a termination date of December 31, 2020 was used for the calculation.  Term. Fee Calc.  TLD's notice indicated November 21, 2020 as the termination date, which was 270 days from the notice of termination date.  Term. Not., Ex. D, ECF No. 17-5.

termination fee—$100,000 that day, and the remaining $140,653.09 within five business days—and requested confirmation of receipt. Am. Compl. ¶¶ 16-17; Term. Not. The notice also stated that the "lease will expire in two hundred seventy (270) days from now, on November 21, 2020. Term. Not. Mr. Flefil confirmed receipt of the termination notice on February 25, 2020. Am. Compl. ¶ 18. Mr. Cramer and Mr. Flefil also exchanged emails on February 28, 2020 relating to delivery of the second payment, in which Mr. Flefil confirmed the termination and sufficiency of the notice. *Id.* ¶ 20; *See* Feb. 28 Emails, Ex. E, ECF No. 17-6. And both payments to cover the termination fee were received and accepted by MCM without further comment. Am. Compl. ¶¶ 21-22. But it did not take long for circumstances to change.

On April 9, 2020, MCM sent TLD a letter stating that based on TLD's notice of termination date, the "Lease shall remain in effect, under all terms and conditions contained therein, until October 31, 2021," not November 21, 2020 as TLD had stated in its notice. *Id.* at ¶ 23; MCM Ltr., Ex. F, ECF No. 17-7. TLD then filed this lawsuit seeking the Court's ruling on the termination date of the Lease Agreement. In response, Morning Calm filed a Motion to Dismiss, ECF No. 9,[4] and MCM filed the pending Motion for Judgment on the Pleadings, ECF No. 10. I allowed TLD to amend its complaint prior to responding to MCM's motion. *See* Order, ECF No. 14. TLD added two causes of action to its Declaratory Judgment complaint: Count II – Negligent Misrepresentation as to Defendant Morning Calm; and Count III – Detrimental Reliance/Promissory Estoppel as to Defendant Morning Calm. Am. Compl. ¶¶ 30-41. MCM addressed the amendment in its reply to its motion. Reply, ECF No. 21.

---

[4] TLD filed an Amended Complaint. The parties then agreed that the Court would first rule on MCM's Motion for Judgment on the Pleadings, and thereafter, Defendants will file a responsive pleading to the Amended Complaint within 21 days. Joint Submission, ECF No. 19. Accordingly, Morning Calm's dismissal motion, ECF No. 9, is denied as moot.

3

## STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Here, the Defendant has not answered the Amended Complaint, so the motion may be premature and more properly construed as a motion to dismiss under Rule 12(b) or converted to summary judgment under Rule 56. *See* Wright & Miller, 5C Fed. Prac. & Proc. Civ. §§ 1368, 1369 (3d ed.); *see also Yang v. Navigators Group, Inc.*, 18 F. Supp. 3d 519, 525–26 (S.D.N.Y. 2014) (construing the defendant's Rule 12(c) motion as a Rule 12(b)(6) motion because the defendant had not answered the Amended Complaint). However, Plaintiff has not objected to the filing of the motion under Rule 12(c), and no prejudice will result from considering the motion before the filing of an answer, so I will exercise my discretion to consider the motion for judgment on the pleadings, which consist only of the Amended Complaint and its attached exhibits.[5]

---

[5]   A Rule 12(c) motion seeks a remedy that is available and appropriate only in certain circumstances—namely, to "dispos[e] of cases in which there is no substantive dispute that warrants the litigants and the court proceeding further." Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1368 (3d ed.). In the federal courts, declaratory judgments are authorized by the federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), which provides (with exceptions not relevant here) that, in "a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." Further, courts have recognized that they have the discretion to permit Rule 12(c) motions even where an answer has not been filed, so long as no prejudice to any party would result. *See, e.g.*, *Ryan v. Thunder Restoration, Inc.*, No. 09–3261, 2009 WL 2766468, at *2 (E.D. La. Aug. 26, 2009) ("In cases involving multiple defendants, courts maintain discretion to consider a 12(c) motion even when one of the defendants has not filed an answer."); *Noel v. Hall*, No. 99–649, 2005 WL 2007876, at *1 (D. Or. Aug. 16, 2005) ("However, courts have exercised their discretion to permit a motion on the pleadings before all defendants have filed an answer where no prejudice to any party would result."); *Jung v. Ass'n of Am. Med. Colls.*, 339 F. Supp. 2d 26, 36 (D.D.C. 2004) (considering Rule 12(b)(6) and Rule 12(c) motions simultaneously). *But see United States ex rel. Barlett v. Tyrone Hosp., Inc.*, No. 3:2004-57, 2009 WL 1010479, at *1 (W.D. Pa. Apr. 14, 2009) (construing defendant's Rule 12(c) motion as a motion to dismiss pursuant to Rule 12(b)(6) where "not all of the other defendants ha[d] filed answers to the Second Amended Complaint and therefore, the pleadings [were] not closed so that a Rule 12(c) motion [could] be made"); *Horen v. Bd. of Educ. of Toledo City Sch. Dist.*, 594 F. Supp. 2d 833, 840 (N.D. Ohio 2009) ("If a case has multiple defendants, all defendants must file an answer before a Rule 12(c) motion can be filed."); *Watson v. Cty of Santa Clara*, No. 06-04029, 2007 WL 2043852, at *1–2 (N.D. Cal. July 12, 2007) (denying Rule 12(c) motion as premature where not all defendants had answered plaintiff's second amended complaint).

Regardless, the same standard applies to Rule 12(c) motions for judgment on the pleadings as to Rule 12(b)(6) motions to dismiss for failure to state a claim. *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014). Thus, the Court determines "the sufficiency of a complaint" without "resolv[ing] contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012) (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering the sufficiency of the pleadings. Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79; *see also Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When reviewing a dismissal motion, "[t]he court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed."[6] *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Moreover,

---

[6] Defendants have not objected.to the authenticity of the Amended Complaint's attachments, and I have considered them.

where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at *2-3 (D. Md. Apr. 12, 2011).

In reviewing a Rule 12(c) motion, all well-pled facts are assumed to be true and all reasonable inferences are drawn in favor of the non-moving party. *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 702 (4th Cir. 2016) (citing *Cooksey v. Futrell*, 721 F.3d 226, 234 (4th Cir. 2013)). "Ultimately, a defendant may not prevail on a motion for judgment on the pleadings if there are pleadings that, if proved, would permit recovery for the plaintiff. Moreover, unlike a Rule 12(b)(6) motion, a Rule 12(c) motion requires the court to consider and decide the merits of the case, on the assumption that the pleadings demonstrate that there are no meaningful disputes as to the facts such that the complaint's claims are ripe to be resolved at this very early stage in the litigation." *Somerville v. West Town Bank & Trust*, Civil No. 19-490 PJM, 2020 WL 8256358, at *1 (D. Md. Dec. 4, 2020) (citations omitted).

**ANALYSIS**

In its motion for judgment on the pleadings, MCM contends that the issue to be resolved involves only the interpretation of the lease's early termination option. Mot. 1. MCM argues that the language of the Lease Agreement is clear and unambiguous and "requires the termination notice be delivered to Landlord no less than two hundred seventy (270) days (*viz.* February 3, or February 4 in a leap year) before the end of the then current Lease Year in order to terminate the Lease as of October 31 of that same Lease Year." *Id.* TLD, however, argues that regardless the language of the Lease Agreement, MCM waived the notice provision and termination date set forth in the Lease Agreement and accepted the termination date of December 31, 2020. Resp. 2-3, ECF

No. 18.  TLD asserts that the sole determination is whether it has pleaded sufficient facts, taken as true, to state a plausible claim.  *Id.* at 4.

MCM's motion for judgment on the pleadings addressed only the Amended Complaint's Count I – Declaratory Judgment, which seeks the Court's interpretation of the Lease Agreement's language with regard to the termination date.  Am. Compl. ¶¶ 25-29.[7]  TLD does not allege that the contract language is ambiguous, and although TLD asserts that "the termination provision is not artfully drafted and is, therefore, ambiguous," it does not rebut MCM's interpretation.  Resp. 1.

The Lease Agreement's early termination provision, § 1.25, provides, in pertinent part:

> Tenant's First Termination Option: During the Initial Term, provided that (i) Tenant is not then in Default under this Lease, and (ii)(a) the contract between The United States Department of Justice and Tenant known as Contract #GS-10F-0022K (the "DOJ Contract") is either revoked … or cancelled … and Tenant shall have provided Landlord with written notice within three (3) business days after Tenant receives written notice of the … DOJ Contract termination along with reasonable supporting documentation … then Tenant shall have the right to terminate the Lease (hereinafter, "Tenant's First Termination Option") by providing written notice to Landlord *not less than two hundred seventy (270) days prior to the expiration of the then Lease Year of the Initial Term* (hereinafter, the "Tenant's First Termination Notice").  *If the Tenant's First Termination Notice is provided as required herein, the Lease will terminate on the last day of the foregoing applicable Lease Year* (hereinafter, the "First Early Termination Date").

Lease Agmt. 2 (emphasis added).  The term "Lease Year" was "defined as the twelve (12) month period commencing on November 1 and ending on October 31 of any given year."  *Id.*  § 3.3.  The parties do not dispute that the DOJ contract was terminated such that TLD could exercise the early termination provision.  Similarly, there is no dispute that at the time it provided its notice of

---

[7] As previously noted, MCM's motion for judgment on the pleadings addressed the original Complaint, ECF No. 1, which contained only the declaratory judgment cause of action.

7

termination, TLD was not in default under the lease. Thus, the dispute is focused on the termination date.

The parties agree that Maryland law governs the interpretation of the contract. *See* Mot. 2; Resp. 2-3. "The interpretation of a contract, including the determination of whether a contract is ambiguous, is a question of law . . . ." *Sy-Lene of Washington, Inc. v. Starwood Urban Retail II, LLC*, 829 A.2d 540, 544 (Md. 2003). Maryland law regarding contract interpretation is well-settled. "[T]he cardinal rule of contract interpretation is to give effect to the parties' intentions." *Dumbarton Imp. Ass'n, Inc. v. Druid Ridge Cemetery Co.*, 73 A.3d 224, 232 (Md. 2013) (quoting *Tomran, Inc. v. Passano*, 891 A.2d 336, 344 (Md. 2006)). Nonetheless,

> [c]ourts in Maryland apply the law of objective contract interpretation, which provides that "[t]he written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite understanding."

*Id.* (quoting *Slice v. Carozza Props., Inc.*, 137 A.2d 687, 693 (Md. 1958)).

When construing an unambiguous contract, "courts focus on the four corners of the agreement[,] and ascribe to the contract's language its customary, ordinary, and accepted meaning." *Dynacorp Ltd. v. Aramtel Ltd.*, 56 A.3d 631, 670 (Md. Ct. Spec. App. 2012) (citations omitted); *see C B Structures, Inc. v. Potomac Elec. Power Co.*, 122 F. Supp. 3d 247, 251–52 (D. Md. 2015); *100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 60 A.3d 1, 23 (Md. 2013). "As such, '[a] contract's unambiguous language will not give way to what the parties thought the contract meant or intended it to mean at the time of execution.'" *Dumbarton*, 73 A.3d at 232 (quoting *Sy–Lene*, 829 A.2d at 546). Additionally, the court must construe the contract "in its entirety and, if reasonably possible, [give] effect ... to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless

no other course can be sensibly and reasonably followed." *Id.* at 232-33 (quoting *Sagner v. Glenangus Farms, Inc.*, 198 A.2d 277, 283 (Md. 1964)); *see also Calomiris v. Woods*, 727 A.2d 358, 366 (Md. 1999) ("Where possible, courts should avoid interpreting contracts so as to nullify their express terms."). In these circumstances, the contract's construction is "an issue of law for resolution by the trial judge." *Bd. of Educ. of Charles Cty. v. Plymouth Rubber Co.*, 569 A.2d 1288, 1296 (Md. Ct. Spec. App. 1990); *Pacific Indem. Co.*, 488 A.2d at 489.

When, however, "there is a bona fide ambiguity in the contract's language or legitimate doubt as to its application under the circumstances . . . the contract [is] submitted to the trier of the fact for interpretation." *Plymouth Rubber*, 569 A.2d at 1296. Nonetheless, "[t]he court may construe an ambiguous contract if there is no factual dispute in the evidence." *Pac. Indem. Co.*, 488 A.2d at 489. Contract language is ambiguous "if, to a reasonably prudent person, the language used is susceptible of more than one meaning and not when one of the parties disagrees as to the meaning of the subject language." *Bd. of Educ. of Charles Cty.*, 569 A.2d at 1296. "An ambiguity does not exist simply because a strained or conjectural construction can be given to a word." *Dumbarton*, 73 A.3d at 233 (quoting *Belleview Constr. Co. v. Rugby Hall Cmty. Ass'n*, 582 A.2d 493, 496 (Md. 1990)).

Here, the contract language related to the termination date is clear and unambiguous. The term "Lease Year" is defined separately from the calendar year as the twelve-month period commencing November 1 in any given year, and ending October 31 of the following year. Lease Agmt. § 3.3. The early termination option requires notice "not less than two hundred seventy (270) days prior to the expiration of the then Lease Year . . . ." *Id.* § 1.25. If the notice is provided as required, "the Lease will terminate on the last day of the foregoing applicable Lease Year . . . ." *Id.* The parties agree that TLD provided notice on February 25, 2020. Two hundred and seventy

days after February 25, 2020 is November 21, 2020. That date falls during the November 1, 2020 to October 31, 2021 Lease Year. Therefore, according to the plain language of the Lease Agreement, the Lease Termination Date was October 31, 2021.

Indeed, TLD does not propose an alternative interpretation of the lease termination provisions of the Lease Agreement. Rather, TLD alleges that MCM waived the notice requirement and agreed to a termination date of December 31, 2020. "Waiver is 'the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances.'" *Kolb v. Acra Control, Ltd.*, 632 F. App'x 87, 92 (4th Cir. 2015) (quoting *Myers v. Kayhoe*, 892 A.2d 520, 530 (Md. 2006) (citations omitted)). Certainly, "the parties [to a contract] by their conduct may waive the requirements of [the] written contract." *Id.* (quoting *Questar Homes of Avalon, LLC v. Pillar Constr., Inc.*, 882 A.2d 288, 294 (Md. 2005) (alteration in original)). And, "[e]ither party to a contract may waive any of the provisions made for his benefit." *Id.* at 93–94 (quoting *Cattail Assocs., Inc. v. Sass*, 907 A.2d 828, 843 (Md. Ct. Spec. App. 2006) (citation omitted)). Courts "look to the totality of a party's actions when determining whether waiver, or modification of the contract, has occurred." *Hovnanian Land Inv. Group, LLC v. Annapolis Towne Centre at Parole, LLC*, 25 A.3d 967, 983 (Md. 2011).

Taking TLD's allegations as true and resolving inferences in TLD's favor, as I must at this stage of the litigation, TLD has set forth a sufficient factual basis to support a claim that MCM waived the provision and agreed to the December 31, 2020 termination date. TLD alleges that Mr. Flefil was MCM's agent and had authority to act on MCM's behalf. Am. Compl. ¶¶ 9, 14. Mr. Flefil calculated the termination fee based on a termination date of December 31, 2020, TLD's

payment was accepted by MCM, and Mr. Flefil confirmed the payment and sufficiency of notice. *Id.* at ¶¶ 16-21.

MCM disputes TLD's allegations, but is not now arguing that the pleadings are insufficient to state a claim that the termination date was waived by MCM's agent, Mr. Flefil. In its reply, MCM acknowledges that the waiver issue is separate and can be litigated after the Court rules on the pending motion by providing the proper interpretation of the Lease Agreement's termination provision. Reply 2. While I have ruled that the termination date language of the Lease Agreement is unambiguous and that, assuming it was not waived as TLD contends, the lease termination date is October 31, 2021, that is all I need to say at this time about that particular clause in the lease, because the waiver issue must proceed further and judgment on the pleadings is not warranted. Accordingly, Defendant's Motion for Judgment on the Pleadings, ECF No. 10, is DENIED.

## CONCLUSION

Based on the plain language of the Lease Agreement, the termination date was October 31, 2021 (and not December 31, 2020). However, TLD has sufficiently alleged that MCM waived the lease provision and agreed to the December 31, 2020 termination date. Therefore, Defendant MCM's Motion for Judgment on the Pleadings, ECF No. 10, is DENIED, and Defendants shall file a responsive pleading to the Amended Complaint within 21 days as agreed.

**ORDER**

For the reasons stated in this Memorandum and Order, it is this 23rd day of February 2021, hereby ORDERED that:

1. Defendant MCM's Motion for Judgment on the Pleadings, ECF No. 10, is DENIED;

2. Defendant Morning Calm's Motion to Dismiss, ECF No. 9, is DENIED AS MOOT;

2. Defendants shall file an Answer or otherwise respond to the Amended Complaint, ECF No. 17, on or before March 17, 2021.

    a. If a dismissal motion is filed, the parties shall follow the briefing schedule agreed to in ECF No. 19, i.e., Plaintiff shall file its response in opposition within 30 days, and Defendants' reply shall be due within 14 days thereafter. The parties are directed to highlight relevant language in any exhibits so the Court can readily determine the relevant information in the exhibit.

    b. If an Answer is filed, the Court will enter a Scheduling Order and schedule a Federal Rule of Civil Procedure 16 conference with the parties to discuss further trial proceedings.

/S/
Paul W. Grimm
United States District Judge